**MAGNIVISION, INC., Third–Party Plaintiff,**

v.

**THE BONNEAU COMPANY and Foster Grant Group, L.P., Third–Party Defendants;**

**and Related Cases.**

**Nos. CV 91–2167 DT TX, CV 92–7553 DT (JGx) and CV 97–8351 DT (JGx).**

United States District Court, C.D. California.

Oct. 13, 1998.

likely to purchase another.

TEVRIZIAN, District Judge.

## I. Background

### A. Factual Summary

The present Order concerns two separate cases currently consolidated before the Court, both of which involve allegations of patent infringement in eyeglass display systems.[1]

*Magnivision, Inc. v. The Bonneau Company and Foster Grant Group, L.P.*, CV 92–7553 (hereinafter, "1992 Action"), involves a patent infringement claim brought by Magnivision, Inc. ("Magnivision"), successor to Al-Site, against The Bonneau Company ("Bonneau") and Foster Grant Group, L.P. ("Foster Grant"), in which Magnivision alleges that one device, the Bonneau Slide Hook, infringes United States Patent No. 5,144,345 (the "'345 Patent"), which is now owned by Magnivision. An undisputed picture of the Bonneau Slide Hook is attached hereto as Exhibit "A." (Fact # 25 of Foster Grant's Statement of Uncontroverted Facts and Conclusions of Law Re '911 Patent.)

The '345 Patent was issued September 1, 1992 for an invention entitled "Hanger for Displaying Eyeglasses." The '345 Patent was issued based on an application filed October 31, 1990, which application was a continuation of Application Serial No. 278,546, filed December 1, 1988, and continuation-in-part of Application Serial No. 145,222, filed January 19, 1988, and later abandoned.

*Magnivision, Inc. v. Foster Grant Group, L.P.*, Case No. CV 97–8351 (hereinafter, "1997 Action"), involves a patent infringement claim by Magnivision against Foster Grant, in which Magnivision alleges that two devices, the Bonneau Slide Hook and the Vertical Hanger, infringe United States Patent No. 5,521,911 (the "'911 Patent"), which is owned by Magnivision. An undisputed picture of the Vertical Hanger is attached hereto as Exhibit "B." (Fact # 23 of Foster Grant's Statement of Uncontroverted Facts and Conclusions of Law Re '911 Patent.) It is undisputed that the Vertical Hanger attaches only to a temple of eyeglasses so that the eyeglasses hang vertically from a cantilever support. (*Id.*)

The '911 Patent was issued on May 28, 1996 for an invention entitled "Hanger for Displaying Eyeglasses." The '911 Patent

---

1. Another case, *Al–Site Corporation v. Costco Wholesale Corporation*, Case No. CV 91–2167 (hereinafter, "1991 Action") is also consolidated along with these two cases; however, the current motions are not directed to this case. The procedural history of the 1991 Action is set forth herein for clarity purposes only.

was issued based on Application Serial No. 365,100 filed December 28, 1994; which is a continuation of Application Serial No. 141,511 filed October 27, 1993 (now abandoned); which is a continuation of Application Serial No. 930,815 filed August 14, 1992 (now U.S.Patent No. 5,260,726); which is a continuation of Application Serial No. 606,179 filed October 31, 1990 (now U.S.Patent No. 5,144,345); which is a continuation of Application Serial No. 278,546 filed December 1, 1988 (now U.S.Patent No. 4,976,532); which is a continuation-in-part of Application Serial No. 145,222 filed January 19, 1998 (now abandoned).

### B. *Procedural History*

#### 1. *The 1991 Action*

On April 22, 1991, Al–Site filed its Complaint against Costco in this Court.

On August 8, 1991, Costco filed its Third–Party Complaint against Bonneau in this Court.

On September 25, 1991, Al–Site filed its Third–Party Complaint against Bonneau in this Court.

On March 16, 1992, Bonneau filed a Motion for Partial Summary Judgment of Noninfringement. On March 30, 1992, Al–Site filed a Cross–Motion for Partial Summary Judgment against Bonneau. Al–Site removed its Cross–Motion from the calendar pursuant to a stipulation between the parties filed on April 16, 1992. On April 21, 1992, this Court entered an Order granting Bonneau's Motion for Partial Summary Judgment of noninfringement.

On April 27, 1992, Al–Site filed a Motion for Reconsideration of the Order granting Bonneau's Motion for Partial Summary Judgment, or in the alternative, for Certification pursuant to 28 U.S.C. § 1292(b). On May 29, 1992, this Court entered an Order Denying Al–Site's Motion for Reconsideration and Granting Al–Site's Motion for Certification.

On October 14, 1992, the Court of Appeals for the Federal Circuit denied Al–Site's petition for permission to appeal the May 29, 1992 orders of this Court.

On October 30, 1992, Al–Site filed a Motion for the Entry of Judgment pursuant to Federal Rule of Civil Procedure 54(b) and for the Stay of Further Proceedings Pending Review of Judgment by the Federal Circuit Court of Appeals.

On November 24, 1991, a Final Judgment of Single Claim (non-infringement) was entered in favor of Bonneau pursuant to Fed. R.Civ.P. 54(b). All other proceedings were stayed pending Al–Site's appeal of this judgment to the United States Court of Appeals for the Federal Circuit.

On December 15, 1992, Al–Site filed its Notice of Appeal in this Court.

On March 31, 1994, the Federal Circuit affirmed this Court's Final Judgment of Single Claim pursuant to Rule 54(b). The stay, by consent, was not lifted.

On May 3, 1994, the mandate of the Federal Circuit was filed and spread upon the minutes of this Court.

On January 28, 1998, Al–Site filed its Motion to Consolidate Actions, which this Court granted on March 9, 1998 by Order entered on March 10, 1998.

#### 2. *The 1992 Action*

On September 2, 1992, Al–Site filed its Complaint in the United States District Court, Northern District of Texas.

On September 17, 1992, Al–Site filed its Amended Complaint in the United States District Court, Northern District of Texas.

On November 30, 1992, Judge Robert B. Maloney of the Northern District of Texas granted Bonneau's Motion to Transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a) and the 1992 Action was assigned to this Court.

On February 9, 1993, Bonneau served its Answer to the Amended Complaint.

On April 19, 1993, this Court denied Al–Site's Motion for Summary Judgment on the issue of patent infringement.

On November 22, 1993, this Court granted Al–Site's Motion for Partial Summary Judgment (Dismissing Affirmative Defense of Inequitable Conduct before the Patent and Trademark Office); denied Al–Site's Motion to Stay all Proceedings pending the trial outcome of a related case pending in the United States District Court for the South-

ern District of Florida (*Al–Site Corp. v. Pennsylvania Optical Co.*, 93–0355–CIV–Atkins); and denied Bonneau's Motion for Summary Judgment on issues of infringement and validity of the '345 patent.

On December 28, 1993, Bonneau filed a Motion for Reconsideration of the Order Granting Partial Summary Judgment.

On January 19, 1994, an Order Denying Bonneau's Motion for Reconsideration was entered.

On March 22, 1994, a Motion in Limine to substitute Magnivision, Inc. as a Party–Plaintiff was filed.

On May 11, 1994, Consent to Proceed Before a United States Magistrate Judge (King) was filed.

On June 21, 1994, a Judgment on the Verdict for Defendant was entered against Magnivision by Judge King.

On June 30, 1994, Magnivision filed a Motion for Judgment as a Matter of Law pursuant to Fed.R.Civ.P.Rule 50(b), and in the alternative, for a New Trial pursuant to Fed. R.Civ.P.Rule 59(a).

On October 3, 1994, an Order Amending the Judgment to correct the spelling of Defendant Bonneau was entered by Judge King.

On October 27, 1994, Judge King denied Magnivision's Motion for Judgment as a Matter of Law and Motion for a New Trial.

On November 21, 1994, Magnivision filed its Notice of Appeal with the United States Court of Appeals for the Federal Circuit from the Judgment on the Verdict entered and from the order denying Magnivision's motions.

On June 9, 1997, the Federal Circuit vacated the Judgment on the verdict entered before Judge King and ordered a new trial.

On November 6, 1997, the 1992 Action was transferred to this Court pursuant to Central District General Order 224.

On January 28, 1998, the Stay previously entered was ordered lifted and the case was returned to this Court's active civil calendar.

On January 28, 1998, Magnivision filed its Motion to Consolidate Actions, which this Court granted on March 9, 1998 by Order entered on March 10, 1998.

### 3. *1997 Action*

On November 13, 1997, Magnivision filed its Complaint against Bonneau.

On November 13, 1997, Magnivision filed its Notice of Related Case pursuant to Local Rule 4.3.

On December 3, 1997, this case was transferred from the calendar of the Honorable Consuelo B. Marshall to this Court pursuant to Central District General Order 224.

On January 28, 1998, Magnivision filed its Motion to Consolidate Actions, which this Court granted on March 9, 1998 by Order entered on March 10, 1998.

On February 10, 1998, Bonneau filed its Answer.

### 4. *Post–Consolidation Procedural Posture*

On April 6, 1998, Plaintiffs Al–Site and Magnivision filed their Motion to Disqualify this Court pursuant to 28 U.S.C. §§ 144 and 455. That Motion was denied by the Honorable William D. Keller on May 7, 1998.

On April 13, 1998, a Mandatory Status Conference was held before this Court; all parties appeared through counsel. The Court set a Discovery Cut–Off Date of October 9, 1998; a Pre–Trial Conference Date of November 11, 1998; and a Trial Date of December 8, 1998.

On June 9, 1998, Magnivision filed a Motion for Partial Summary Judgment, whereby Magnivision sought to dismiss (1) Bonneau's affirmative defense of patent invalidity for failure to disclose best mode, claim indefiniteness, and inadequacy of disclosure in the 1992 Action; and (2) Bonneau's affirmative defense of release in the 1997 Action. On July 28, 1998, this Court granted Magnivision's Motion for Partial Summary Judgment on Bonneau's affirmative defenses of invalidity and release.

On August 3, 1998, Magnivision filed a Motion to Amend the Complaints in the 1991, 1992 and 1997 Actions, which this Court granted.

On August 11, 1998, Bonneau filed (1) Motion for Reconsideration, In Part, under Local Rule 7.16, of Order Entered July 28, 1998

Granting Magnivision's Motion for Partial Summary Judgment on Certain Affirmative Defenses Or, in the Alternative, to Alter or Amend Judgment Pursuant to Fed.R.Civ.P. 59(e) and (2) Motion for Reconsideration of Order Granting Magnivision's Summary Judgment Regarding Bonneau's and Its Parent AAI's Release For Claims of Infringement Against Vertical Hangers. This Court denied both motions for reconsideration.

On August 17, 1998, Magnivision filed a Motion for Sanctions Pursuant to Fed. R.Civ.P. 37(b)(2) and 37(d), which this Court denied.

On August 31, 1998, Magnivision filed an Amended Complaint in the 1991 Action and the 1997 Action, and it filed a Second Amended Complaint in the 1992 Action.

On September 15, 1998, Bonneau and Foster Grant filed their Answer to the Amended Complaint in the 1991 Action and to the Second Amended Complaint in the 1992 Action. On September 16, 1998, Foster Grant filed its Answer to the Amended Complaint in the 1997 Action.

Presently before this Court are the following motions:

(1) Magnivision's Motion for Claim Construction of the '345 and '911 Patents;

(2) Magnivision's Motion for Summary Judgment of Infringement in the 1992 Action and the 1997 Action;

(3) Bonneau's Motion for Partial Summary Judgment That the Bonneau Slide Hook Does Not Infringe the '345 Patent; and

(4) Foster Grant's Motion for Summary Judgment of Noninfringement of the '911 Patent.

## II. *Standard for Summary Judgment Motion*

### A. *General Standard*

Under the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue

of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *Id.; see* Fed.R.Civ.P. 56(e).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511. The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders her claim implausible. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes the use of summary judgment. *Harper v. Wallingford,* 877 F.2d 728 (9th Cir.1989); *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

### B. *Summary Judgment in Patent Infringement Cases*

The Federal Circuit has "repeatedly emphasized that summary judgment is as appropriate in a patent case as in any other." *Avia Group Int'l, Inc. v. L.A. Gear Calif., Inc.,* 853 F.2d 1557, 1561 (Fed.Cir.1988). In an infringement action, the plaintiff bears the burden of proof on the issue of infringement. *In re Hayes Microcomputer Products, Inc. Patent Litigation,* 982 F.2d 1527, 1541 (Fed. Cir.1992). As such, in support of its motion for summary judgment, Magnivision must show that the undisputed facts establish every element of its infringement claim by a preponderance of the evidence, and Bonneau and Foster Grant, in support of their motions for summary judgment, may discharge their

burden by showing that there is an absence of evidence to support Magnivision's case since Magnivision, as the nonmoving party, bears the burden of proof at trial. *Conroy v. Reebok Intern., Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994).

■ "Where ... the parties do not dispute any relevant facts regarding the accused product but disagree over which of two possible meanings of [the patent claim] is the proper one, the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1578 (Fed.Cir.1996).

## III. *Magnivision's Objection To The Designation of Martin Siegel As An Expert Witness Is Meritless*

■ At the outset, this Court addresses Magnivision's objection to the designation of Martin Siegel as Bonneau's expert witness on the topic of point of purchase displays. Magnivision asserts that Mr. Siegel does not have a degree in industrial design and does not have experience on the field of retailing or retail study. Bonneau counters that Mr. Siegel is experienced in designing product displays and that he was previously qualified and admitted as an expert.

This Court overrules Magnivision's objection to the designation of Mr. Siegel. In his declaration, Mr. Siegel states that he has "extensive technical and practical experience in the art of mechanical design" and that he has "personally performed numerous design works, including but not limited to design of product displays." (Siegel Decl., ¶ 3.) Moreover, Mr. Siegel has previously submitted declarations in both the 1991 and 1992 Actions and significantly, he was qualified and admitted as an expert at the trial in the 1992 Action.

## IV. *This Court Determines Infringement By First Construing The Claims And Then Comparing The Claims To The Accused Device*

In determining the present motions at issue, this Court is guided by the principles set forth in this section.

■ An infringement analysis involves a two-step inquiry: (1) determining the meaning and scope of the patent claims asserted to be infringed; and (2) comparing the properly construed claims to the accused device. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

### A. *Claim Construction*

■ Claim construction of a patent, including terms of art within claims, is exclusively within the province of the court, not the jury. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 388–89, 116 S.Ct. 1384, 1395, 134 L.Ed.2d 577 (1996).

> It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history. *See Markman,* 52 F.3d at 979, 34 U.S.P.Q.2d at 1329. Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language.

*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). The first step is to look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention. *Id.* Second, it is necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning. *Id.* The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication. *Id.* "Claims must be read in view of the specification, of which they are a part." *Id. (citing Markman,* 52 F.3d at 979). The specification is always highly relevant to the claim construction analysis, and usually, it is dispositive; it is the single best guide to the meaning of a disputed term. *Id.* The drawings or figures of the patent are considered with the specification in interpreting claim language. *Wright Medical Technology, Inc. v. Osteonics Corp.,* 122 F.3d 1440, 1443 (Fed.Cir.1997). Third, the court may also consider the prosecution history of the patent, if in evidence. *Vitronics Corp.,* 90 F.3d at 1582.

■ If an analysis of the intrinsic evidence alone will resolve any ambiguity in a

disputed claim term, it is improper to rely on extrinsic evidence. *Id.* at 1583. Extrinsic evidence is that evidence which is external to the patent and file history, such as expert testimony, inventor testimony, dictionaries, and technical treatises and articles. *Id.* at 1584. Extrinsic evidence in general, and expert testimony in particular, may be used only to help the court come to the proper understanding of the claims; it may not be used to vary or contradict the claim language. *Id.*

### B. *Literal Infringement*

██ In order to find literal infringement, the accused device must contain every limitation of the asserted claim. *Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533, 1535 (Fed.Cir. 1991). "It is ... well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element ... in the accused device." *Lemelson v. United States,* 752 F.2d 1538, 1551 (Fed.Cir.1985).

### C. *Doctrine of Equivalence*

██ If an accused product does not fall within the literal language of a properly construed claim, infringement may be shown nevertheless if an accused device performs substantially the same function in substantially the same way to achieve substantially the same result. *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950). All of the claim elements or functions must be present in the accused device, literally or by an equivalent function or element. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 117 S.Ct. 1040, 1054, 137 L.Ed.2d 146 (1997). However, a one-to-one correspondence between components of the accused device and the claimed invention is not necessary:

> One-to-one correspondence of components is not required and elements or steps may be combined without ipso facto loss of

equivalency. In other words, two physical components of an accused device may be viewed in combination to serve as an equivalent of one element of a claimed invention, as long as no claim is thereby wholly vitiated.

*Ethicon Endo–Surgery, Inc. v. United States,* 149 F.3d 1309, 1320 (Fed.Cir.1998) (citations omitted).

██ A determination of equivalence under the doctrine of equivalents is a question of fact. *Lemelson,* 752 F.2d at 1550. However, the Supreme Court has made it clear that "[w]here the evidence is such that no reasonable jury could determine two elements to be equivalent, district courts are obliged to grant partial or complete summary judgment." *Warner–Jenkinson,* 117 S.Ct. at 1053, n. 8.

### MAGNIVISION'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '345 PATENT AND BONNEAU'S MOTION FOR SUMMARY JUDGMENT OF NON–INFRINGEMENT OF THE '345 PATENT

Magnivision seeks summary judgment in its favor that the Bonneau Slide Hook infringes Claim 5 of the '345 Patent. Conversely, Bonneau seeks summary judgment in its favor that the Bonneau Slide Hook does not infringe Claim 5 of the '345 Patent. As such, this Court must first construe Claim 5 of the '345 Patent by applying the principles set forth above.

██ This Court, however, does not need to address the entire language of Claim 5. If any one limitation of the claim at issue is missing from the accused device, then there can be no infringement as a matter of law. *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 936 (Fed.Cir.1987) (en banc). As a starting point, then, this Court will address those limitations of Claim 5 which Bonneau contends are not met by the Bonneau Slide Hook.[2]

---

**2.** In Magnivision's motion for claim construction, Magnivision seeks an order adopting the construction of Claim 5 of the '345 Patent and Claims 1–3 of the '911 Patent as proffered in the motion. Because of this Court's findings with respect to certain limitations in dispute, this Court does not need to address the entire language of each of these claims. To the extent that certain claim language is in dispute as raised by the motions for summary judgment, then this Court will address Magnivision's motion for claim construction and rule accordingly.

## I. *Construction of Claim 5 of the '345 Patent*

### A. *This Court Must Interpret "A First Rod Receiving Area and a Second Rod Receiving Area Formed in Said Hanger Member"*

 Bonneau asserts that the claim construction dispute relates to the last two clauses of Claim 5. The first clause which is in dispute ("Clause # 1") provides as follows:

a first rod receiving area and a second rod receiving area formed in said hanger member below the upper edge thereof, said first and second rod receiving areas spaced apart from each other by the distance between said two rods, said first rod receiving area and said second rod receiving area configured to allow a first of said rods to extend through said first rod receiving area and the second of said rods to extend through said second rod receiving area so that said hanger member is supported by said two rods, said hanger member slidable along said two rods when said first rod extends through said first rod receiving area and said second rod extends through said second rod receiving area to secure a horizontal for said eyeglasses when said hanger member is supported on said two rods

(Col. 8, lns. 9–25 of the '345 Patent.)

Overall, Bonneau asserts that the disputed elements—"a first rod receiving area and a second rod receiving area formed in said hanger"—only cover an enclosed elongated aperture or hole capable of being selectively usable with either a single-rod or a double-rod cantilevered support and not the Bonneau Slide Hook's opposed open-ended slots capable of being used with only a double-rod cantilevered support. Magnivision claims that although Figure 1 of the '345 Patent demonstrates a rod receiving area which is one winged hole, the rod receiving areas are any areas on the hanger through which the duel rod cantilever extends. It states that nothing in the claim indicates that the two rod receiving areas must be contiguous but only that the hanger should include a first and second rod receiving area. Magnivision asserts the following claim construction for Clause # 1:

The hanger includes a first and second rod receiving area. A rod receiving area is merely an area through which a rod extends. The first and second rod receiving areas are spaced apart from each other by the distance between the two rods. The first rod extends through the first rod receiving area and the second rod extends through the second rod receiving area. This (i) supports the hanger so that the hanger can slide along the rods, and (ii) maintains a horizontal orientation for the eyeglasses.

Bonneau asserts initially that the term "rod receiving area" is ambiguous because the term does not impart any clear, definite meaning to anyone skilled in the art of mechanical design. It supports this assertion with the declaration of Professor Siegel who states that "rod receiving area" has no common, settled, conventional meaning in the art of mechanical design. (Siegel Decl., ¶¶ 25–26.) Magnivision argues that this Court has already construed the term "rod receiving area" in its July 28, 1998 Order ("July Order") and therefore, this Court's previous construction is the law of the case. In addition, it submits the declaration of Professor Anders who states that the term is understandable to anyone with expertise in the field of point of purchase displays. (Anders Decl., ¶¶ 18–19.)

Contrary to Magnivision's assertions, this Court did not engage in any claim construction in its July Order. Rather, in the context of determining whether Claim 5 was invalid for indefiniteness, this Court found that the term "rod receiving area" was not indefinite. Presently, this Court is faced with the task of construing Claim 5 of which this term is a part. This does not mean, though, that this Court disregards its previous statements. In the July Order, this Court concluded that a rod receiving area is an area through which a rod extends. This Court arrived at this conclusion after making the following observation:

When Claim 5 of the '345 Patent is read in context, it is clear that Claim 5's reference to 'two rod receiving areas' on the eyeglass hanger member, in conjunction with the reference to a 'cantilever support' includ-

ing 'two rods' on the eyeglass display member, describe an interface between two rods on the display and two rod receiving areas on the hanger.

(Order, p. 17.) In essence, this "interface" is now the focus of this claim construction issue. Specifically, the meaning of the words of Clause # 1—"a first rod receiving area and a second rod receiving area formed in said hanger member"—are the subject of this dispute and require construction by this Court. While Magnivision urges this Court to end its construction of Claim 5 because the term "rod receiving area" is not ambiguous, it ignores the principle that this Court "must give meaning to all the words in [the] claims." *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1559 (Fed.Cir. 1995), *cert. denied*, 518 U.S. 1020, 116 S.Ct. 2554, 135 L.Ed.2d 1073 (1996). In addition, the parties present conflicting testimony of their experts whether one of ordinary skill in the art would understand the terminology "rod receiving area."

As guided by the Federal Circuit, then, this Court must look to the patent specification. This Court is cognizant that patents are construed primarily by reference to the public patent record so that the public need not guess at unforeseen future claim interpretations that might be based upon unforeseen, litigation-induced, extrinsic testimony. *Southwall Technologies v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed.Cir.1995). "Claims are not interpreted in a vacuum, but are part of and are read in light of the specification." *Fromson v. Anitec Printing Plates, Inc.*, 132 F.3d 1437, 1442 (Fed.Cir.1997) (citation omitted).

The specification does not use the words "rod receiving area." However, it references areas through which rods extend:

The hanger is constructed with an aperture that receives a cantilevered bar projecting horizontally from a wall of the display, which bar may be of the single or double arm type....

(Col. 1, lns. 48–55 of the '345 Patent.)

Now referring particularly to FIGS. 1, 2 and 3. Hanger 10, constructed in accordance with a first embodiment of the instant invention, includes main element 11 (FIG.3) which is a single sheet of relatively stiff resilient plastic material, typically a polythepe. Element 11 consists of rectangular relatively wide main section or body 12 and relatively narrow extension 14. It is intended that front surface 29 of body 12 bear identifying indicia 28. Body 12 is provided with elongated aperture section 16 that is substantially longer than the width of extension 14, and is disposed in the vicinity of and extends parallel to edge 17. Centered between the ends of aperture section 16 and extending therefrom toward edge 17 is notch-like aperture section 18. Elongated section 16 is adapted to receive a cantilevered support comprising spaced parallel arms 19. 19, which project horizontally from wall 20, while notch section 18 is adapted to receive a cantilevered support consisting of single horizontal arm 21.

(Col. 2, lns. 47–65 of the '345 Patent.)

The specification references an "aperture that receives a cantilevered bar." It states that the bar may be of the single or double arm type. It also states that the hanger is provided with "aperture section 16" which is formed to receive "a cantilevered support comprising spaced parallel arms." In the middle of "elongated" aperture section 16 is a "notch-like aperture section 18" which is formed to received "a cantilevered support consisting of [a] single horizontal arm." When these words are viewed in conjunction with the Figures which are referenced, it is clear that the words of Claim 5—"a first rod receiving area and a second rod receiving area formed in said hanger member"—mean that the area through which a rod extends is enclosed within the hanger so that the hanger can receive either a single arm or a double arm bar. Contrary to Magnivision's interpretation, the words of Claim 5, "formed in," do not equate with "includes." The hanger encloses and gives form to the rod receiving areas.

The prosecution history of the patent supports this conclusion as well. In the file history of the '345 Patent, Magnivision states that "[a]n **opening means is formed in** the hanger member below the upper edge thereof and receives the cantilever support...." (Cobrin Reply Decl., Exh. 1, p. 7.) (Emphasis added.) Clearly, there can only be an "open-

ing" in the hanger if the hanger fully surrounds such opening.

In addition, included in an analysis of the prosecution history is an examination of the prior art cited therein, which may help identify what the claims do not cover. *Vitronics,* 90 F.3d at 1583. During the prosecution of the '532 Patent, which is the '345 Patent parent, the Examiner repeatedly rejected the pending claims on the basis of, *inter alia,* lack of novelty and obviousness in view of what is disclosed in Patent No. 3,710,996 ("Smilow"). (Reilly Decl., Exh. 16, p. 132 and pp. 142–43 and Exh. 17, pp. 142 and 150.) The Smilow patent discloses a display hanger which has an open-ended slot by which the Smilow hanger is mounted on a support. (Reilly Decl., Exh. 21, p. 227.) In its response to the Examiner's rejection of the claims in the parent application, Magnivision stated that the Smilow reference does not teach an "aperture means." (Reilly Decl., Exh. 16, pp. 136 and 142.) During the prosecution of the patent, Magnivision emphasized that "with the Applicant's claimed invention, a plurality of eyeglasses can be conveniently and securely supported on either a single or double-arm-type cantilevered bar." (Reilly Decl., Exh. 16, p. 140.)

In *Al–Site Corp. v. The Bonneau Co.,* 22 F.3d 1107, 33 U.S.P.Q.2d 1136, 1139 (Fed.Cir. 1994), the Court looked to the prosecution history and parent application to support the district court's construction that the aperture means of the disputed claim was limited to an enclosed hole. The comments by the Federal Circuit are equally applicable here:

> The fact that Al–Site expressly stated that the open-ended slot of Smilow et al. did not teach its claimed aperture means lends credence to the interpretation that 'aperture means' is limited to an *enclosed* hole and structural equivalents thereof. (citations omitted) (emphasis in original).

Magnivision claims that because the term "rod receiving area" was never discussed or used in the '532 Patent, the questions raised on the issue of patentability are different. It states that the '345 Patent was filed as a continuation of the '532 Patent to obtain broader protection. It argues that contrary to Bonneau's assertion that the claims are limited to exactly what was disclosed in the '532 Patent, the patent examiner did not limit or reject Claim 5 based on the earlier '532 Patent.

This Court does not look to the prosecution history, including the parent application, of the '345 Patent to address whether Claim 5 is limited by the disclosures in the '532 Patent. Rather, this Court looks to these references for aid in construing Clause # 1 of the '345 Patent. In addition, while this Court agrees in general with Magnivision that rejection of a portion of a claim in one patent does not limit the patentability of a similar portion of a new claim, this principle has no application here.

▬▬▬ Magnivision also emphasizes that it is error to incorporate non-recited functional and/or structural limitations from the specification into the claims. *Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1277 (Fed. Cir.1995). "Although the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro–Devices Inc.,* 848 F.2d 1560, 1571 (Fed.Cir. 1988). Based on previous hearings in this Court, Magnivision states that this is the "canon of importance" because it appears to believe that this Court is not cognizant of this principle.

In this instance, a reading of the specification provides evidence to indicate that the limitations found above must be imported into the claims to give meaning to the disputed terms. *See id.* In other words, the limitation that the rod receiving areas must be closed within the hanger is imported into Clause # 1 to give meaning to the disputed terms.

▬▬▬ Bonneau further contends that permissible extrinsic evidence supports its construction. Specifically, it cites to statements by the inventor, Michael Nyman, wherein Nyman admitted that he contemplated a hanger that was usable with either a single-arm or a double-arm "U"-shaped cantilever and that all of the prototypes that he made of his claimed hanger card during the development of his invention included an enclosed opening. (Reilly Decl., Exh. 13, pp. 94–97.) This

Court finds that reliance on this extrinsic evidence would be improper. Although this evidence does not vary or contradict the claim language, only if there were still some genuine ambiguity in the claims, after consideration of all available intrinsic evidence, should this Court resort to extrinsic evidence. *Vitronics Corp.*, 90 F.3d at 1584.[3]

This Court finds that the rod receiving areas must be within, or enclosed by, the hanger card. Nothing in the specification or the prosecution history supports Magnivision's broad construction that a first and second rod receiving area can be anywhere in the hanger. *See Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1024 (Fed.Cir.1997) (adopting narrow interpretation because "[n]othing in the written description suggest[ed]" patentee's interpretation), op. amended, 131 F.3d 1009 (Fed.Cir.1997); *O.I. Corp. v. Tekmar Co., Inc.*, 115 F.3d 1576, 1581 (Fed.Cir.1997) (affirming summary judgment of non-infringement—adopting narrow construction limited to the structures disclosed in the specification, in part because "[none] of the structures contemplated by the written description" encompassed a feature possessed by the accused device).

## B. *"Rod Receiving Areas" Is Not A Means–Plus–Function Element*

■ Bonneau alternatively contends that "rod receiving areas" is a means-plus-function element under 35 U.S.C. § 112, ¶ 6 and is therefore limited to the centrally-located elongated aperture disclosed in the specification. Magnivision disputes this.

■ 35 U.S.C. § 112, ¶ 6 provides as follows:

An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

To invoke this statute, the alleged means-plus-function claim element must not recite a definite structure which performs the described function. *Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 531 (Fed.Cir.1996).

Because of this latter requirement, this Court agrees with Magnivision and finds that "rod receiving areas" is not a means-plus-function element. In other words, Clause # 1 recites a definite structure which performs a described function:

a first rod receiving area and a second rod receiving area **formed in said hanger member below the upper edge thereof,** said first and second rod receiving areas **spaced apart from each other by the distance** between said two rods, said first rod receiving area and said second rod receiving area **configured to allow** a first of said rods to extend through said first rod receiving area and the second of said rods to extend through said second rod receiving area so that said hanger member is supported by said two rods, said hanger member slidable along said two rods when said first rod extends through said first rod receiving area and said second rod extends through said second rod receiving area to secure a horizontal for said eyeglasses when said hanger member is supported on said two rods

The bolded words describe the structure allowing the hanger and cantilevers to interact. "An element with such a detailed recitation of its structure, as opposed to its function, cannot meet the requirements of the statute." *Id.*

3. Reference to dictionary definitions is permissible. "Judges are free to consult such resources at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found or ascertained by a reading of the patent documents." *Vitronics Corp.*, 90 F.3d at 1584, n. 6. The Webster's Ninth New Collegiate Dictionary (1990) defines (i) "form" as "to give form or shape to" and "shape or mold into a certain state or after a particular model" and (ii) "in" as "a function word to indicate inclusion, location, or position within limits." Thus, even assuming that this Court accepted Magnivision's proposition that the disputed language should be given its "ordinary" and "plain" meaning, this Court's construction as discussed above would still be proper. "A first rod receiving area and a second rod receiving area formed in said hanger member" would mean two areas through which a rod extends shaped within limits of the hanger member.

## II. Infringement of Claim 5 of the '345 Patent

### A. The Bonneau Slide Hook Does Not Literary Infringe Claim 5 Of The '345 Patent

■ As set forth above, to prove literal infringement, Magnivision must show that the accused device contains every limitation of Claim 5. This Court finds that Magnivision has failed to show that the Bonneau Slide Hook contains the limitation in Clause #1 requiring the rod receiving areas to be enclosed within the hanger. With respect to this limitation, Magnivision states that "the Bonneau Slide Hook includes a first rod receiving area 46 and a second rod receiving area 48." However, as stated above, "includes" does not equate with "formed in," and the Bonneau Slide Hook's rod receiving areas are not "formed in said hanger member."

### B. The Bonneau Slide Hook Does Not Infringe Claim 5 Of The '345 Patent Under The Doctrine of Equivalents

■ First, Bonneau asserts that under the doctrine of collateral estoppel, this Court's findings of non-infringement in favor of Bonneau, as affirmed by the Federal Circuit, in the motion for summary judgment in the 1991 Action with respect to Claim 8 of the '532 Patent preclusively establish that the Bonneau Slide Hook is not equivalent to Claim 5 of the '345 Patent.

This Court declines to apply the doctrine of collateral estoppel. The issue before this Court is not identical to the issue decided in the 1991 Action. In the 1991 Action, the Court determined that Claim 8 contained a means-plus-function element. Here, this Court has not so determined. As such, this Court applies the doctrine of equivalents to the Bonneau Slide Hook and Claim 5.

■ Bonneau contends that the Bonneau Slide Hook is not capable of being selectively usable with either a single-rod or a double-rod cantilever, which the hanger element of Claim 5 does. It states that this dual capability is a key feature of the claimed hanger and compels a summary judgment of non-infringement under the doctrine of equivalents.

Magnivision contends that the Bonneau Slide Hook has the same function of Clause #1 in Claim 5, which is to provide areas through which the rods of a cantilever can extend. It states that the way in which the rod receiving area in the Bonneau Slide Hook permits the dual rod cantilever to engage the hangtag is by providing an open space or area in the hangtag. It argues that this is the same way the rod receiving areas in Claim 5 allow the hangtag to engage the cantilever—by providing an area through which the rods may extend to engage the hangtag. Finally, it states that the result is that (i) the hangtag is supported and can slide along the cantilever and (ii) when the hangtag is on the cantilever, it maintains a horizontal orientation for the eyeglasses.

This Court finds that Magnivision has failed to show the element, or any substantial equivalent, in the Bonneau Slide Hook which encloses the rod receiving area to allow a single-arm cantilever to engage the hangtag. While a one-to-one correspondence is not necessary, it appears that there is no equivalent enclosure component in the Bonneau Slide Hook to allow use of single-arm cantilever, thereby wholly vitiating this claim limitation. As such, the Bonneau Slide Hook does not perform substantially the same function in substantially the same way to achieve substantially the same result, and no reasonable jury could conclude that the Bonneau Slide Hook infringes Claim 5 of the '345 Patent under the doctrine of equivalents.

### C. This Court Does Not Address Bonneau's Second Asserted Limitation

Bonneau additionally contends that the Bonneau Slide Hook does not infringe Claim 5 because it cannot meet the limitation in a second clause of Claim 5 which requires the temples of the eyeglasses to be "substantially parallel" when hung. Because this Court has found that the Bonneau Slide Hook does not infringe Claim 5 in light of this Court's construction of Clause #1, this Court does not need to address the parties' contentions regarding the disputed language of the second clause at issue in Claim 5.

### III. *Conclusion*

Because Magnivision has failed to show by a preponderance of the evidence that the Bonneau Slide Hook infringes Claim 5 of the '345 Patent either literally or under the doctrine of equivalents, this Court **denies** Magnivision's Motion for Summary Judgment of Infringement. Because Bonneau has shown that the Bonneau Slide Hook does not infringe Claim 5 of the '345 Patent, this Court **grants** Bonneau's Motion for Partial Summary Judgment That The Bonneau Slide Hook Does Not Infringe The '345 Patent.[4]

### MAGNIVISION'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '911 PATENT AND FOSTER GRANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '911 PATENT

Magnivision seeks summary judgment that (i) the Vertical Hanger infringes Claims 1–3 of the '911 Patent and (ii) the Bonneau Slide Hook infringes Claims 1–3 of the '911 Patent. Foster Grant seeks summary judgment that (i) the Vertical Hanger does not infringe Claims 1–3 of the '911 Patent and (ii) the Bonneau Slide Hook does not infringe Claims 1–3 of the '911 Patent.

### I. *The Vertical Hanger*

#### A. *Construction Of Claim 1 Of The '911 Patent*

**1. This Court interprets "encircling portion," "part of said frame" and "selected orientation"**

The '911 Patent has three claims: independent claims 1 and 3 and dependent claim 2. Foster Grant claims that two clauses in Claim 1 contain limitations which are absent in the Vertical Hanger, and therefore, there can be no infringement. The first clause ("Clause # 1") provides as follows:

an eyeglass contacting member having an encircling portion adapted to encircle a part of said frame of said pair of eyeglasses to enable the temples of the frame to be selectively displaced between said closed position and said open position such that the eyeglass contacting member does not interfere with a potential user's view through the lenses when the eyeglasses are tried on

(Col. 4, lns. 43–50 of the '911 Patent.)

In Clause # 1, Foster Grant disputes two phrases: "encircling portion" and "part of said frame." With respect to "encircling portion," Foster Grant contends that in light of the specification, this means a buttoned loop. With respect to "part of said frame," Foster Grant contends that in light of the specification, this means the nose bridge of the eyeglasses. Magnivision, on the other hand, contends that the phrase "encircling portion" is a section of the larger hanger member which surrounds a part of the frame. Magnivision acknowledges that while "a part of said frame" refers broadly to include the bridge of the eyeglasses, it states that this claim language is broader than the preferred embodiment of a "bridge," and thus the claim cannot be limited to the preferred embodiment.

This Court finds that the eyeglass contacting member must have a portion that "encircles," or circles around, a part of the frame of the eyeglasses and fastens closed. The ordinary meanings of the terms "encircling" and "encircle,"[5] as well as the specification, support this finding. The specification repeatedly refers to the this encircling portion as a closed "loop":

[T]he hanger is constructed of a relatively stiff resilient plastic sheet material that is provided with a loop portion that wraps loosely around the bridge of the eyeglass frames.

(Col. 1, lns. 49–51 of the '911 Patent.)

A rivet or other fastener that is not readily removable is used to maintain the loop portion closed.

(Col. 1, lns. 64–65 of the '911 Patent.)

In referring to the Figures, the specification provides:

---

**4.** This Court notes that Bonneau's motion is for "partial" summary judgment. It appears to this Court that the findings set forth herein dispose of all claims in the 1992 Action.

**5.** "Encircle" means "to form a circle around." Webster's Ninth New Collegiate Dictionary (1990).

Extension 14 runs through gap 34 and is reversely bent to form loop 41 that encircles bridge 35. Loop 41 is maintained closed by fastening means in the form of metal rivet 43....

(Col. 3, lns. 8–10 of the '911 Patent.)

This Court further finds that "a part of said frame" does not necessarily mean the bridge of the eyeglasses. When given their ordinary meaning, these words mean any part of the eyeglass frame and not exclusively the bridge. While the specification and the figures refer to the bridge, Claim # 1 itself sets forth that "said frame including temples and said first and second lenses mounted in said frame ... said frame further including a bridge portion extending across said gap...." (Col. 4, lns. 31–34 of the '911 Patent.) Foster Grant has not pointed to any evidence in the specification or prosecution history that mandates a construction wherein the bridge is the only part of the frame that can be used. As such, "a part of said frame" means any part of the frame and does not mean just the bridge.

■ The second clause asserted by Foster Grant to contain a limitation not found in the Vertical Hanger ("Clause # 2") provides as follows:

Said cantilever support adapted to support a plurality of said eyeglass contacting members to maintain a selected orientation for the eyeglasses associated with each such eyeglass contacting member while said eyeglass contacting member is supported thereon[.]

(Col. 4, lns. 51–55 of the '911 Patent.)

With respect to Clause # 2, Foster Grant disputes the phrase "selected orientation." It asserts that in light of the specification, drawings and prosecution history, "selected orientation" means "horizontal." Magnivision asserts that the term selected orientation can be any orientation. (Anders Decl. at p. 13.) It states that the fact that Figure 1 of the specification details a horizontal orientation is of little effect since limitations from the specification should not read into the claims. In sum, then, this Court needs to determine from the intrinsic evidence whether the inventor intended the term "selected" to mean any orientation as chosen by any person, or to mean the specific orientation as set forth, or "selected," in the '911 Patent.

This Court finds that the specification and in particular, the prosecution history, support a construction of "selected orientation" to mean the specific orientation as set forth in the '911 Patent, which is horizontal. *See Renishaw PLC v. Marposs Societa per Azioni*, 158 F.3d 1243, 1248, 1998 U.S.App. Lexis 22680, *12 (Fed.Cir.1998) ("The intrinsic evidence ... can shed light on the meaning of the terms recited in a claim, either by confirming the ordinary meaning of the claim terms or by providing special meaning for claim terms.").

The specification teaches that "[w]hen eyeglasses 30 are being fitted, main section 12 is intended to be in front of the customer's forehead in a position that does not interfere with the customer's view ..." (Col. 3, lns. 18–19 of the '911 Patent.) In other words, if the customer were to try on a pair of eyeglasses, the main section of the hanger must be in front of his forehead. If the selected orientation were other than horizontal, this would not occur. Moreover, the patent's history supports this construction. Before the first Patent Office action, Magnivision stated as follows:

New claims ... are submitted herein, in order for Applicant to claim the full scope of his invention.... [T]he fact that the eyeglasses are hung from a cantilever support in a horizontal manner forms part of the essence of the present invention....

\* \* \* \* \* \*

In order to fully understand the importance of this aspect of the present invention, it is first noted that it is important when hanging eyeglasses that the eyeglasses hang in a horizontal orientation. This is important because it is aesthetically pleasing to the consumer since it results in an orderly display, which results in the sale of more eyeglasses.

(Popovski Decl., Exh. 5, pp. 30–31.) Similarly, in another admission during prosecution, Magnivision asserted:

[C]laim 10 ... has been amended to recite that with its temples folded, the eyeglasses are ... maintained in a horizontal position

when mounted to a cantilevered support by applicant's hanger means. This arrangement is not taught or suggested by the art of record.

 \* \* \* \* \* \*

As distinguished from Smilow et al. '996, applicant's hanger positions eyeglasses so that they are horizontal thereby permitting a shopper to obtain a relatively clear view of what the eyeglasses will look like even before the shopper tries on the eyeglasses. (Popovski Decl., Exh. 4, p. 24.) Through these statements, Magnivision proclaimed that the "essence" of its invention was the fact that the eyeglasses hung in a "horizontal manner." It stressed that the horizontal orientation of the glasses was important for sales to the customer. Thus, "selected orientation" means a horizontal orientation.

### B. *Infringement Of Claim 1 Of The '911 Patent*

#### 1. The Vertical Hanger does not literally infringe Claim 1 of the '911 Patent

Foster Grant asserts that the Vertical Hanger cannot infringe Claim 1 of the '911 Patent because Claim 1 does not cover hanging eyeglasses from a temple without an encircling loop and because the orientation of the Vertical Hanger is vertical and not horizontal. According to Magnivision, the Vertical Hanger's contacting member has a portion which encircles a part of the frame, and its eyeglasses are maintained in a particular orientation.

In applying the construction of Claim 1, as set forth above, to the Vertical Hanger, this Court finds that the Vertical Hanger does not infringe Claim 1 of the '911 Patent literally as a matter of law. Under a literal infringement theory, the Vertical Hanger does not have an encircling loop that fastens together the eyeglass and the eyeglass contacting member. Instead, the eyeglass contacting member has two slits, or openings, through which the temple of the eyeglasses slides. The Vertical Hanger also does not maintain the eyeglasses in a horizontal orientation when hung on the cantilever support. Instead, it hangs the eye-

glasses in a vertical position. As such, the Vertical Hanger does not literally infringe Claim 1 of the '911 Patent.

#### 2. The Vertical Hanger does not infringe Claim 1 of the '911 Patent under the doctrine of equivalents

The maintenance of the eyeglasses in a horizontal orientation prevents the Vertical Hanger from infringing Claim 1 under the doctrine of equivalents. The Vertical Hanger does not perform substantially the same function of Claim 1 in substantially the same way to achieve substantially the same result—the eyeglasses are hung in a vertical position rather than in a horizontal position. As such, this Court finds that Claim 1 is not infringed equivalently by the Vertical Hanger as a matter of law.

Foster Grant also asserts prosecution history estoppel; it states that the prosecution history of the '911 Patent bars any possible infringement by the Vertical Hanger. Prosecution history estoppel precludes a patentee from obtaining in an infringement suit patent protection for subject matter which it relinquished during prosecution in order to obtain allowance of the claims. *Mark I Marketing Corp. v. R.R. Donnelley & Sons Co.,* 66 F.3d 285, 291 (Fed.Cir.1995). The standard for determining whether particular subject matter was relinquished is an objective one that depends on what a competitor reasonably would conclude from the patent's prosecution history. *Id.* The application of prosecution history estoppel is a question of law. *Id.*

Magnivision argues that the cases relied on by Bonneau discuss prosecution history estoppel only in the context of arguments made in the patent office for that particular patent. This Court finds this argument meritless. It is clear that the prosecution history must be examined as a whole in determining whether estoppel applies, including parent applications. *Id.* Magnivision also relies on language from certain cases for the proposition that it filed the '911 Patent to obtain a broader range of protection, and thus, prosecution history estoppel is inapplicable.[6] This Court finds that these cases are

---

**6.** These cases are: *In re Craig,* 56 C.C.P.A. 1438, 411 F.2d 1333 (1969), *In re Herr,* 54 C.C.P.A.

1315, 377 F.2d 610 (1967) and *In re Donohue,* 766 F.2d 531 (Fed.Cir.1985).

inapposite, as they deal with appeals from decisions of the USPTO Board of Appeals rejecting certain claims of an invention.

Foster Grant maintains that the prosecution history of the '911 Patent limits the invention to a hanger used to display eyeglasses in a horizontal orientation and excludes vertical orientation as an equivalent. This Court agrees. The prosecution history, as set forth above, demonstrates that Magnivision claimed the horizontal orientation as the "essence" of its invention. *See Desper Products, Inc. v. QSound Labs, Inc.,* 157 F.3d 1325, 1338 (Fed.Cir.1998) ("Unequivocal assertions or arguments made during prosecution may also create an estoppel."). Moreover, it asserted that the claims were distinguishable over the prior art based on the horizontal orientation. *See id.* ("Amendments made to overcome a prior art rejection can create such an estoppel."). Thus, in this Court's view, a competitor reviewing the prosecution history of the '911 Patent reasonably would conclude that, or order to procure issuance of the patent, Magnivision surrendered claim coverage to an eyeglass display system which hung the eyeglasses in a vertical orientation. As such, under prosecution history estoppel, this Court finds that the Vertical Hanger does not infringe Claim 1 of the '911 Patent.

### C. *The Vertical Hanger Does Not Infringe Claim 2 Of The '911 Patent*

■■■ Claim 2 of the '911 Patent provides "[t]he combination according to claim 1." (Col. 4, ln. 66 of the '911 Patent.) Thus, it depends on and includes each limitation of Claim 1. Therefore, Claim 2 cannot be infringed if Claim 1 is not infringed. "One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim." *Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1552, n. 9 (Fed.Cir.1989); *see also Glaxo, Inc. v. Novopharm, Ltd.,* 110 F.3d 1562, 1566 (Fed.Cir.1997). As such, this Court finds that the Vertical Hanger does not infringe Claim 2 of the '911 Patent as a matter of law.

### D. *The Vertical Hanger Does Not Infringe Claim 3 Of The '911 Patent*

Foster Grant claims that certain limitations contained in the following two clauses of Claim 3 are absent in the Vertical Hanger, and therefore, there can be no infringement:

said eyeglass contacting member having an attaching portion attachable to a portion of said frame of said pair of eyeglasses to enable the temples of the frame to be selectively displaces between said closed position and said open position, said attaching portion locating at least a portion of said eyeglasses at a position below at least a portion of said eyeglass contacting member when said attaching portion is attached to said portion of said frame and in a manner such that the eyeglass contacting member does not interfere with a potential user's view through the lenses when the eyeglasses are tried on

("Clause # 1") (Col. 5, ln. 25–Col. 6, ln. 10 of the '911 Patent.)

said cantilever support engaging said eyeglass contacting member to maintain a selected orientation for the eyeglasses while said eyeglass contacting member is slidably movable thereon

("Clause # 2") (Col. 6, lns. 11–14 of the '911 Patent.)

Because Clause # 2 of Claim 3, including the phrase "selected orientation," is identical to Clause # 2 in Claim 1, this Court does not need to construe other disputed language to find that the Vertical Hanger does not infringe Claim 3 of the '911 Patent either literally or equivalently. For the same reasons set forth above in Sections A and B, this Court finds that the Vertical Hanger does not infringe Claim 3 of the '911 Patent either literally or equivalently as a matter of law.

### E. *Conclusion*

Accordingly, because Magnivision has failed to show that the Vertical Hanger infringes Claims 1–3 of the '911 Patent by a preponderance of the evidence, this Court **denies** Magnivision's Motion for Summary Judgment. Because Foster Grant has shown that the Vertical Hanger does not infringe Claims 1–3 of the '911 Patent, this Court

**grants** Foster Grant's Motion for Summary Judgment.

## II. *The Bonneau Slide Hook*

### A. *Claims 1 and 3 of the '911 Patent Contain a Means–Plus–Function Limitation*

■ Foster Grant contends that the following language from Claims 1 and 3 compels a finding that the Bonneau Slide Hook does not infringe those claims of the '911 Patent:

said cantilever support engaging said eyeglass contacting members in a manner to position the eyeglasses associated therewith so that when the temples of said eyeglasses are in a folded, closed position said temples do not penetrate the display member exterior surface and are substantially parallel to the folded temples of any other pair of eyeglasses whose eyeglass contacting member is supported by said cantilever support thereby allowing a plurality of said eyeglass contacting members to be supported thereon

(Col. 4, lns. 56–65 & Col. 6, lns. 15–24 of the '911 Patent.) Specifically, Foster Grant asserts that (1) the claims require the eyeglasses to be "substantially parallel" to one another; (2) the meaning of the phrase "cantilever support engaging said eyeglass contacting member" requires a centrally-located, enclosed hole capable of receiving a cantilever support having one or two arms' and (3) the "cantilever support engaging" language is a means-plus-function element subject to the claim construction rule of 35 U.S.C. § 112, ¶ 6.[7] This Court finds that this latter argument is persuasive.

■ A means-plus-function limitation contemplated by 35 U.S.C. § 112, ¶ 6 recites a function to be performed rather than definite structure or materials for performing that function. *Chiuminatta Concrete Concepts v. Cardinal Industries*, 145 F.3d 1303, 1307 (Fed.Cir.1998). In determining whether to invoke the statutory mandates for means-plus-function clauses, the use of the word "means" triggers a presumption that

the inventor used this term advisedly to invoke the statute. *York Prods., Inc. v. Central Tractor*, 99 F.3d 1568, 1574 (Fed.Cir. 1996). Magnivision seizes upon this presumption and asserts that the claims of the '911 Patent are not written in means-plus-function language because they do not use the word "means." Nonetheless, "the recitation of some structure in a means plus function element does not preclude the applicability of section 112(6)." *Chiuminatta*, 145 F.3d at 1307 (*citing Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1536 (Fed.Cir. 1991)). Courts have construed functional language introduced by "so that" to implicate 35 U.S.C. § 112, ¶ 6. *See, e.g., Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed.Cir. 1983), *cert. denied*, 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984); *Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 530–31 (Fed.Cir. 1996.)

In this case, this Court finds that the "cantilever support engaging" language of Claims 1 and 3 is a means-plus-function limitation because it recites a function to be performed rather than definite structure or materials for performing that function. While use of the words "so that" in these claims implicates section 112, ¶ 6, importantly, no structure can be found in the limitation that would save it from application of this section.

### B. *Construction of the Means–Plus–Function Limitation of Claims 1 and 3 of the '911 Patent*

■ A means-plus-function limitation must be construed "to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. A determination of the claimed function is a matter of construction of specific terms and is therefore a question of law. *Chiuminatta*, 145 F.3d at 1308. A determination of corresponding structure is a determination of the meaning of the "means" term in the claim and is thus a matter of claim construction. *Id.*

---

7. 35 U.S.C. § 112, ¶ 6 provides as follows:
 An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof,

and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

The Court finds that the function identified in the means clause of Claims 1 and 3 is as follows:

> engaging said eyeglass contacting members in a manner to position the eyeglasses associated therewith so that when the temples of said eyeglasses are in a folded, closed position said temples do not penetrate the display member exterior surface and are substantially parallel to the folded temples of any other pair of eyeglasses

This Court further finds that the specification identifies the following corresponding structure performing that function:

> Body 12 is provided with elongated aperture section 16 that is substantially longer than the width of extension 14, and is disposed in the vicinity of and extends parallel to edge 17. Centered between the ends of aperture section 16 and extending therefrom toward edge 17 is notch-like aperture section 18. Elongated section 16 is adapted to receive a cantilevered support comprising spaced parallel arms 19. 19, which project horizontally from wall 20, while notch section 18 is adapted to receive a cantilevered support consisting of single horizontal arm 21.

(Column 2, lns. 57–67 of the '911 Patent.)

### C. The Bonneau Slide Hook Does Not Literally Infringe Claims 1 and 3 of the '911 Patent

Having identified the corresponding structure of the recited means, the next question is whether the accused device is equivalent to that structure. *Chiuminatta*, 145 F.3d at 1309. "To determine whether a claim limitation is met literally, where expressed as a means for performing a stated function, the court must compare the accused structure *with the disclosed structure*, and must find equivalent *structure* as well as *identity* of claimed *function* for that structure." *Pennwalt Corp. v. Durand–Wayland, Inc.*, 833 F.2d 931, 934 (Fed.Cir.1987) (in banc) (emphasis in original). The test to apply is whether the differences between the structure in the accused device and any disclosed in the specification are insubstantial. *Chiuminatta*, 145 F.3d at 1309.

Foster Grant asserts that the Bonneau Slide Hook cannot be mounted on a cantilever support having one arm because of its use of two open-edge slots. This Court finds this structural difference to be more than insubstantial. The structure of the limitation of Claims 1 and 3 that produces the function of engaging the eyeglass member is an enclosed hole that is capable of receiving a double-arm cantilever, including a notch in the hole that is capable of receiving a single-arm cantilever. The assertedly equivalent structure of the Bonneau Slide Hook is two opposed open-edged slots capable of receiving only a double-arm cantilever. Since these structures are substantially different from each other, they cannot be equivalent, and no reasonable jury could so find.

### D. The Bonneau Slide Hook Does Not Infringe Claims 1–3 Of The '911 Patent Under The Doctrine Of Equivalents

Determination of infringement of a means-plus-function limitation under the doctrine of equivalents requires the fact-finder to determine whether the structural differences between the particular elements of the accused device and the asserted claim's limitations as recited in the claim and as shown in the corresponding means structures in the specification are insubstantial. *Mas–Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed.Cir.1998). In this case, there can be no doctrine of equivalents infringement because, as explained above, the structure of the Bonneau Slide Hook is substantially different compared with the structure as set forth in the limitation of Claims 1 and 3. "An element of a device cannot be 'not equivalent' and equivalent to the same structure." *Chiuminatta*, 145 F.3d at 1311. As such, this Court finds that the Bonneau Slide Hook does not infringe Claims 1 and 3 as a matter of law.

### E. The Bonneau Slide Hook Does Not Infringe Claim 2 of the '911 Patent

Because Claim 2 depends on and includes Claim 1, Claim 2 cannot be infringed by the Bonneau Slide Hook as a matter of law. *See* Discussion supra at Section I(C), p. 43.

### F. *Conclusion*

Accordingly, because Magnivision has failed to show that the Bonneau Slide Hook infringes Claims 1–3 of the '911 Patent by a preponderance of the evidence, this Court **denies** Magnivision's Motion for Summary Judgment. Because Foster Grant has shown that the Bonneau Slide Hook does not infringe Claims 1–3 of the '911 Patent, this Court **grants** Foster Grant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

### ORDER

(1) **GRANTING IN PART AND DENYING IN PART** MAGNIVISION'S MOTION FOR CLAIM CONSTRUCTION OF THE '345 AND '911 PATENTS;

(2) **DENYING** MAGNIVISION'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT IN THE 1992 ACTION AND THE 1997 ACTION;

(3) **GRANTING** BONNEAU'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE BONNEAU SLIDE HOOK DOES NOT INFRINGE THE '345 PATENT; AND

(4) **GRANTING** FOSTER GRANT'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF THE '911 PATENT.