**Shelley K. COLE, Plaintiff–Appellant,**

v.

**KIMBERLY–CLARK CORPORATION, Defendant–Appellee.**

No. 95–1505.

United States Court of Appeals, Federal Circuit.

Dec. 6, 1996.

Rehearing Denied; Suggestion for Rehearing In Banc Declined Feb. 18, 1997.*

---

\* Circuit Judge Schall did not participate in the vote.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, argued, for plaintiff-appellant. On the brief were Morgan Chu, Richard De Bodo, Gary N. Frischling, and Flavio M. Rose, Irell & Manella, Los Angeles, CA. Also on the brief was J. Michael Jakes, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC.

V. Bryan Medlock, Jr., Richards, Medlock & Andrews, Dallas, TX, argued, for defendant-appellee. Of counsel on the brief were William H. Baumgartner, Jr., Constantine L. Trela, Jr., and Susan M. Davies, Sidley & Austin, Chicago, IL. Of counsel was Harry M. Beggs, Carson Messinger Elliott Laughlin & Ragan, P.L.L.C., Phoenix, AZ.

Before RICH, NEWMAN, and RADER, Circuit Judges.

Opinion for the court filed by Circuit Judge RICH. Dissenting opinion filed by Circuit Judge RADER.

RICH, Circuit Judge.

Plaintiff-appellant Shelley K. Cole (Cole) appeals from a judgment of the U.S. District Court for the District of Arizona in a patent infringement case, *Cole v. Kimberly–Clark Corp.*, No. CIV 93–2010 (D. Ariz. filed 27 July 1995). The district court entered the judgment against Cole following its grant of a summary judgment motion by defendant-appellee Kimberly–Clark Corporation (K–C). The district court held that K–C's accused products do not literally infringe Cole's U.S. Patent No. 4,743,239 ('239 patent), and that Cole's claims for infringement under the doctrine of equivalents are barred by prosecution history estoppel. We affirm.

# I

## BACKGROUND

The '239 patent issued 10 May 1988 and is entitled, "Disposable Brief Having an Area of Relatively Thin Absorbent Material and an Area of Relatively Thick Absorbent Material." Briefs are close-fitting, legless underpants. The claimed invention consists of a disposable brief for use during toilet training. Among other features, the claimed brief has a combination of three separate absorbent layers of varying thickness and sides that can be easily torn open so that a soiled brief can be removed without pulling it over the legs. The only independent claim of Cole's '239 patent reads, with our emphasis, as follows:

1. A disposable training brief comprising, in combination:

outer impermeable layer means;

first absorbent layer means, including a first relatively thin outer absorbent layer and a first relatively thin inner absorbent layer, substantially coextensive with the outer impermeable layer;

second absorbent layer means including a relatively thick absorbent layer secured to the first absorbent layer means and disposed between the first outer absorbent layer and the first inner absorbent layer for providing a relatively highly absorbent layer;

waist band means for securing the training brief to the user;

leg band means through which the user's legs extend;

*perforation means extending from the leg band means to the waist band means through the outer impermeable layer means for tearing the outer impermea-*

ble layer means for removing the training brief in case of an accident by the user, and

side zones on the outer impermeable layer means adjacent to the perforation means at which the first absorbent layer means terminates.

On 1 December 1986, slightly less than one month after she had filed her patent application, Cole sent a copy of it to K–C with a letter explaining her idea for disposable training briefs. K–C, however, was developing its own disposable training brief and was apparently not interested in Cole's brief.

In 1989, K–C began marketing disposable training briefs that have three absorbent layers of varying thickness and sides that can be easily torn open. Cole filed suit against K–C on 19 October 1993, alleging that K–C's Huggies® Pull–Ups® and Huggies® Good-Nites® (accused products) infringe the '239 patent. Both Cole's claimed design and K–C's accused products can be torn apart along the sides.

K–C filed a motion for summary judgment of noninfringement on 28 July 1994. By an order entered 31 March 1995, the district court ruled that K–C was entitled to summary judgment on Cole's literal infringement claim, but not on her claim of infringement under the doctrine of equivalents.

As to the literal infringement claim, the district court found that there was no genuine issue of material fact with respect to Cole's contention that K–C's training briefs employ "perforation means." It found that "[t]he only reasonable reading of this language is that the sides of her invention tear by means of a perforation, but K–C's accused products do not have perforations." Instead, K–C's training briefs "have seams which have been bonded together and are capable of tearing. When the side seams are torn, it becomes obvious that the sides are not held together by perforations as they leave a jagged tear line." The district court thus granted summary judgment of no literal infringement by K–C after first concluding that, "as used in Cole's patent, a 'perforation means' is a perforation," and then concluding that none of K–C's accused products includes perforations.

As to the claim of infringement under the doctrine of equivalents, the district court stated in its 31 March Order that genuine issues of material fact existed with respect to equivalents and prosecution history estoppel, because of conflicting expert testimony. The court ruled that it could not resolve the prosecution history estoppel arguments in the context of a motion for summary judgment and declined to hold that Cole was precluded by prosecution history estoppel from claiming a range of equivalents that would include K–C's accused products. The court found that a factual issue existed with respect to how one of ordinary skill in the art would interpret Cole's distinguishing, in the PTO, of U.S. Patent No. 4,619,649 (the Roberts patent), which describes disposable briefs that use "perforate side seams" to facilitate tearing and removal. The court also declined to hold on summary judgment that an estoppel arose from Cole's distinguishing, in her 25 April 1991 reexamination petition, of U.S. Patent No. 4,610,681 (the Strohbeen patent) and U.S. Patent No. 4,205,679 (the Repke patent)—both of which disclose disposable briefs with ultrasonic-bonded side seams.

Both Cole and K–C moved for reconsideration. By an order entered 20 June 1995, the district court granted K–C's motion and denied Cole's. On the issue of literal infringement, Cole argued that the district court erred because the "perforation means ... for tearing" element of her claims was a "means-plus-function" element under 35 U.S.C. § 112, ¶ 6, and thus must be construed to encompass all embodiments disclosed in the specification and their equivalents. The specification of the Cole patent refers to scoring, scored sides, and perforations. The court found, however, that the "perforation means" element cannot qualify as a means-plus-function element under section 112, ¶ 6, because it includes the word "perforation" and therefore refers to a definite structure to perform the tearing function. Thus, it adhered to its prior grant of K–C's motion for summary judgment of no literal infringement.

On reconsideration of the issue of infringement under the doctrine of equivalents, however, the district court did not, in its 20 June Order, adhere to its prior ruling. Here, K–C urged reconsideration in view of this court's decision in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 34 USPQ2d 1321 (Fed.Cir.) (in banc), *aff'd*, —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), which issued less than a week after the district court initially ruled. K–C argued that *Markman*'s announcement that prosecution history is to be evaluated as a matter of law in the context of claim construction made clear that prosecution history estoppel also presents a legal question for the court. K–C also argued that the district court erred in its evaluation of Cole's effort to distinguish the Strohbeen and Repke patents by focusing only on what those patents claimed, rather than what they disclosed. The district court agreed with these arguments. It then examined the prosecution history of Cole's '239 patent, particularly with regard to the Roberts, Strohbeen, and Repke patents. The court concluded that, because of prosecution history estoppel, "perforation means" cannot be read to include the seams formed by the ultrasonic welds in K–C's accused products. The district court therefore also granted K–C's motion for summary judgment of no infringement under the doctrine of equivalents.

After K–C elected not to pursue its counterclaims seeking a declaratory judgment that Cole's patent is invalid and unenforceable, the district court directed entry of judgment on Cole's complaint in a final judgment dated 27 July 1995. This appeal followed.

## II

### INFRINGEMENT

■ A district court should approach a motion for summary judgment on the fact issue of infringement with great care. *Pa-*

*lumbo v. Don–Joy Co.*, 762 F.2d 969, 974, 226 USPQ 5, 7 (Fed.Cir.1985) (citing *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1573, 225 USPQ 236, 238 (Fed.Cir.1985)), *overruled on other grounds by Markman*, 52 F.3d at 976–79, 34 USPQ2d at 1327–29. Our review of a grant of summary judgment is plenary. *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1449, 27 USPQ2d 1297, 1301 (Fed.Cir.1993). We must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ The district court properly noted that analysis of patent infringement involves two steps: (1) claim construction to determine what the claims cover, i.e., their scope, followed by (2) determination of whether the properly construed claims encompass the accused structure. We review step (1) *de novo* in a summary judgment case, just as we would after a full trial. *Markman*, 52 F.3d at 979, 34 USPQ2d at 1329 ("Because claim construction is a matter of law, the construction given the claims is reviewed *de novo* on appeal."). Our review of step (2) is, however, different after a district court grants a motion for summary judgment of noninfringement than it would be after a full trial.

■ As to step (2), in a summary judgment case like this one, we first determine *de novo* whether any "genuine issue as to any material fact" exists. We agree with the district court that there is no genuine issue as to any material fact in this case. Therefore, after construing claim 1, we will decide *de novo* whether K–C was "entitled to a judgment as a matter of law" (i.e., whether K–C cannot as a matter of law infringe the properly construed claims of Cole's patent).[1]

---

1. If we were reviewing whether the properly construed claims encompass the accused structure after a full trial, our standard of review would not be *de novo* as it is here. If this were an appeal after a bench trial, we would review the district court's determination of whether the properly construed claims encompass the accused structure for clear error. *See* Fed.R.Civ.P.

52(a); *Markman*, 52 F.3d at 977, 34 USPQ2d at 1327. If this were an appeal after a jury trial, we would review the jury's determination of whether the properly construed claims encompass the accused structure and decide whether that determination is supported by substantial evidence. *See Markman*, 52 F.3d at 975, 34 USPQ2d at 1326.

## A. Claim Construction

The '239 patent includes nine product claims, and claim 1, quoted in its entirety above, is the only independent claim. The following three subsections recount prosecution history, and the fourth subsection contains our construction of the claimed "perforation means."

### 1. Prosecution of the Application Leading to the '239 Patent

On 18 March 1987, the patent examiner rejected claims 1, 2, 5–8, and 10 of Cole's application under 35 U.S.C. § 102(a) or (e) as anticipated by Roberts. Additionally, claims 3, 4, and 9 were rejected under 35 U.S.C. § 103 as being unpatentable over Roberts in view of Johnson.

The Roberts patent describes the problem of removing soiled training pants by sliding them down the child's legs. It solves that problem "by providing side portions with a perforate seam or a chain stitched seam ... so that the seams can be readily split apart from the waistband to the leg band on both sides thereby providing for easy removal of the training pants." The "perforate side seam ... is formed by overlapping and using a side edge portion ..: of the outer lining ... with similar edge portion ... then providing perforations ... to allow separation of the fused area by tearing same." Separation of the chain stitch seam is accomplished by pulling the stitches out and separating the front overlap of the back portion of the brief. The Johnson patent was not at issue in the district court and, accordingly, we will not discuss it further here.

In an amendment dated 16 June 1987, Cole responded to the rejections by amending her claims to include more details about the absorbent layers of her training pants. Cole also discussed Roberts as follows:

> It will be noted that the Roberts patent discloses overlapping edges at the sides between the waist bands [sic] and the leg bands, and the overlapping layers are stitched together. The stitched seams can not be readily torn apart in the Roberts patent, but the apparatus of the present invention utilizes perforations to allow the training brief to be readily torn so as to expedite the removal of the training brief. It is respectfully submitted that this feature of the training briefs of the present invention is neither suggested nor taught by the Roberts patent. It will also be noted that the Examiner made no specific comment concerning this feature in his rejection.

On 5 August 1987, the examiner issued a notice of allowance of Cole's application as amended, without comment.

### 2. The 1991 Request for Reexamination of the '239 Patent

On 25 April 1991, Cole submitted a first request for reexamination of her patent. Cole cited the Strohbeen patent as well as the four patents cited during the prosecution of the Strohbeen patent, including the Repke patent. The other three patents cited were not at issue in the district court and consequently will not be discussed here.

The Strohbeen patent issued in September 1986 to two K–C employees. The patent describes their invention as an improvement over the disposable brief disclosed in U.S. Patent No. 4,641,381 (the Heran patent). The Heran patent discloses a disposable brief with the inner layer and outer layer of the cover "bonded to one another by any means appropriate for the specific materials selected for the two layers." Heran explains that a useful construction for the side seals is a manually tearable seam. "This can be obtained by bonding the contacting side edge portions along a narrow bond within the side seam portions." Heran goes on to say that "[o]ne way to make a seam of this type is to bond the contacting side portions by suitably controlled sonic sealing...."

The Strohbeen invention improved on the Heran design by turning the side seams outward, away from the wearer's body, which simplified the manufacturing process and removed a potential source of skin irritation to the wearer. As in Heran, the Strohbeen side seams could be formed by sonic sealing. The patent states: "A particularly preferred system for the invention is found to be ultrasonic sealing. It has been found that an ultrasonic sealing anvil having a plurality of lines

closely spaced together such that four sealing lines may be fit within the preferred space between 1/8 to 3/16″ is particularly desirable. The sealing lines may be discontinuous, forming dashed lines." The ultrasonic-bonded seams can be torn to permit removal of the training pant.

In her reexamination petition, Cole addressed Strohbeen as material "only to the extent that both patents ['239 and Strohbeen] deal with disposable underpants garments and multiple absorbent layers. Structurally, the [Strohbeen] patent is not believed to be material to the claimed subject matter of the instant patent except for multiple absorbent layers." Cole further stated that the Strohbeen patent "appears to be drawn primarily to the side seams," but concluded that "[t]he side seams of the [Strohbeen] patent are substantially different from the side seams of the instant '239 patent." This was Cole's only statement regarding the side seams of the Strohbeen patent.

Cole's 25 April 1991 reexamination request also addressed the Repke patent, which is assigned to Johnson & Johnson and discloses a disposable brief with separable sides. The Repke specification identifies a number of techniques for forming the side seams of its brief, including adhesive bonding and sonically sealed strips. Both methods of forming side seams allow tearing of the seams for removal when the brief becomes soiled. Cole commented on Repke's side seams in her reexamination request as follows:

> Side seams [of the Repke patent], which extend between leg cutout portions and the waist, are adhesively secured together. Several different embodiments of side seam constructions are illustrated. The different side seam embodiments including dovetailing, and butting, and variations thereof. A common characteristic of the side seams is that there are continuous adhesive beads [sic, bonds] of some type of adhesive, hot-melt elastic, or the like.

She also stated that Repke was "not believed to be pertinent, structurally, to any of the claims in [her] '239 patent."

On 10 July 1991, the examiner denied Cole's first request for reexamination. The examiner stated that the patents cited by Cole "are not material to the examination of the instant patent claims since the essential features of the claims .... are not present in the cited patents." More specifically, the examiner stated that, *inter alia*, the "perforation means" are not disclosed in the cited patents.

### 3. The 1993 Request for Reexamination of the '239 Patent

On 4 January 1993, Cole filed a second request for reexamination citing the Heran patent, described above, which is assigned to K–C. Cole stated, "[s]tructurally, the [Heran] patent is not believed to be material to the claimed subject matter of the ['239] patent except possibly for having tearable side seams."

On 23 February 1993, the examiner denied Cole's second request for reexamination, stating that "although Heran et al does disclose the garment as having tearable side seams they do not include perforation means extending from the leg band means to the waist band means through the outer impermeable layer."

In its decision, the district court did not specifically rely upon the second reexamination request and Cole's comments about the Heran patent.

### 4. Construction of "Perforation Means"

For purposes of this appeal, we focus our attention on the fifth element of claim 1, which reads,

> perforation means extending from the leg band means to the waist band means through the outer impermeable layer means for tearing the outer impermeable layer means for removing the training brief in case of an accident by the user.

■ The district court correctly ruled that the claimed "perforation means ... for tearing" is not a means-plus-function element under § 112, ¶ 6, which reads as follows:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in

support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof. 35 U.S.C. § 112, ¶ 6 (1994). To invoke this statute, the alleged means-plus-function claim element must not recite a definite structure which performs the described function. Patent drafters conventionally achieved this by using only the words "means for" followed by a recitation of the function performed. Merely because a named element of a patent claim is followed by the word "means," however, does not automatically make that element a "means-plus-function" element under 35 U.S.C. § 112, ¶ 6. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 19 USPQ2d 1367 (Fed.Cir.1991), cited in the dissenting opinion, creates no presumption to the contrary. The converse is also true; merely because an element does *not* include the word "means" does not automatically prevent that element from being construed as a means-plus-function element. *See, e.g., Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957, 220 USPQ 592, 597 (Fed.Cir. 1983) (construing functional language introduced by "so that" to be equivalent to "means for" claim language), *cert. denied,* 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984); 1162 O.G. 59, 59 (17 May 1994) (examination guidelines stating that the term "means" is not required to invoke § 112, ¶ 6). We decide on an element-by-element basis, based upon the patent and its prosecution history, whether § 112, ¶ 6 applies. *See Palumbo,* 762 F.2d at 975, 226 USPQ at 8 (Fed.Cir.1985) (courts should consider prosecution history when construing "means-plus-function" claims).

■ The drafter of claim 1 in the '239 patent was clearly enamored of the word "means": six of seven elements in that claim include the word "means," which occurs in the claim fourteen times. We find, however, no reason to construe any of the claim language in claim 1 as reciting means-plus-function elements within the meaning of § 112, ¶ 6. For example, the "perforation means ... for tearing" element of Cole's claim fails to satisfy the statute because it describes the structure supporting the tearing function (i.e., perforations). The claim describes not

only the structure that supports the tearing function, but also its location (extending from the leg band to the waist band) and extent (extending through the outer impermeable layer). An element with such a detailed recitation of its structure, as opposed to its function, cannot meet the requirements of the statute. Here, the claim drafter's perfunctory addition of the word "means" did nothing to diminish the precise structural character of this element. It definitely did not somehow magically transform this element into a § 112, ¶ 6, "means-plus-function" element.

■ The district court correctly recognized that words in a patent claim are construed as they would be understood by a reader skilled in the relevant art unless it appears that the inventor used the words differently. Since there is no evidence to suggest that "perforation" has any meaning other than the dictionary definition accepted by the court, we look to that definition, which reads as follows:

a hole, or one of a number of holes, bored or punched through something, as those between individual postage stamps of a sheet to facilitate separation.

*Webster's Encyclopedic Unabridged Dictionary* (1989). We construe the "perforation means ... for tearing" to mean "perforations" as did the district court. We further construe "perforations" in view of the above dictionary definition.

Cole is also bound by her representations to the PTO during the prosecution of the '239 patent. Therefore, we next consider what effect the prosecution history of the '239 patent has, if any, on our construction of "perforation means."

Subsection II(A)(1) above discusses how Cole distinguished the Roberts patent. We believe Cole erred in her response to the first office action when she stated that "[t]he stitched seams can not be readily torn apart in the Roberts patent...." The stitched seams in Roberts are designed to be readily torn apart by "grabbing the chain stitch and pulling same which disassociates edges 18 and 19." Further, Roberts' preferred embodiment uses a perforate seam rather than

a chain stitch seam. We do not, however, agree with the district court's interpretation of what Cole surrendered when distinguishing the Roberts patent in her first office action. The only thing Cole expressly surrendered when distinguishing the Roberts patent was stitched seams when she argued that perforations are not stitched seams.

As noted above in subsection II(A)(2), in Cole's first request for reexamination, she stated, "The side seams of the [Strohbeen] patent are substantially different from the side seams of the instant [Cole] patent." The Strohbeen patent notes, however, that ultrasonic sealing is a "particularly preferred system for the [Strohbeen] invention." Cole made similar arguments regarding the significance of the Repke patent. The district court found that an estoppel arose from Cole's distinction of the Strohbeen and Repke patent. We agree. When Cole distinguished these references, she thereby surrendered any argument that her "perforation means" encompasses ultrasonic bonded seams.

This estoppel was bolstered when Cole distinguished the Heran patent in her second request for reexamination. As noted above in subsection II(A)(3), Cole stated that the Heran patent was not pertinent structurally, except possibly for having tearable side seams. Heran, however, discloses ultrasonic bonding to make its seams. *See* subsection II(A)(2).

In summary, we believe the district court correctly concluded that the "perforation means" element is not a means-plus-function element under § 112, ¶ 6. We also believe the district court correctly interpreted the prosecution history to require that the "perforation means" limitation cannot be construed to include ultrasonic bonded seams. Cole surrendered ultrasonic bonded seams in her requests for reexamination.

**B. Literal Infringement**

■ Literal infringement of a claim exists when every limitation recited in the claim is found in the accused device, i.e., when the properly construed claim reads on the accused device exactly. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580, 12 USPQ2d 1382,

1384 (Fed.Cir.1989) (citing cases). In a summary judgment case, we review *de novo* whether the properly construed claims read on the devices accused of infringing.

■ In the instant case, since K–C's accused products do not literally meet all of the claim limitations, we hold as a matter of law that there is no literal infringement. The claimed "perforation means," as we construed that element above, does not read on K–C's accused products.

Therefore, from our *de novo* review of the record, we hold that the district court correctly concluded that K–C does not literally infringe the claims of the '239 patent and properly granted summary judgment of no literal infringement.

**C. Infringement Under the Doctrine of Equivalents**

■ From our *de novo* review, we also hold that the district court did not err in finding as a matter of law no infringement under the doctrine of equivalents. The district court correctly concluded that K–C's accused products do not infringe the '239 patent under the doctrine of equivalents based upon that patent's undisputed prosecution history, during which Cole relinquished coverage in order to obtain and preserve her patent. For example, Cole surrendered ultrasonic bonded seams in her requests for reexamination when distinguishing the Strohbeen patent, the Repke patent, and the Heran patent. Strohbeen discloses the use of ultrasonic sealing to form the side seams of its disposable briefs. In her first request for reexamination, Cole stated that Strohbeen's side seams were substantially different from the side seams of her invention. Similarly, Repke discloses the use of "spaced sonic welds" to form the side seams of its disposable briefs. Repke also teaches that its briefs can be torn at the seams to facilitate removal. Cole, however, told the PTO that Repke was "not believed to be pertinent, structurally, to any of the claims." Finally, in her second reexamination request, Cole also limited the claimed "perforation means" to perforations when distinguishing the Heran patent.

## III

### CONCLUSION

For the above reasons, we hold that no genuine issue as to any material fact exists and that K–C is entitled to a judgment as a matter of law of no literal infringement and no infringement under the doctrine of equivalents. We therefore affirm the district court's judgment.

## IV

### COSTS

Each party shall bear its own costs.

***AFFIRMED.***

RADER, Circuit Judge, dissenting.

In my view, the district court granted summary judgment in the face of disputed factual issues over both literal infringement and infringement by equivalents. Therefore, I respectfully dissent.

My divergence on literal infringement focuses on the term "perforation means" in the fifth element of claim one. Under the statutory regime of 35 U.S.C. § 112, ¶ 6, a means-plus-function format has significant implications. Because the "perforation means ... for tearing" claim also recites some structure, this court avoided addressing those implications. The recitation of some structure, however, does not remove a claim from the scope of section 112, ¶ 6. *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1536, 19 USPQ2d 1367, 1369 (Fed.Cir.1991). Mere invocation of the word "means" also does not magically conjure all the implications of means-plus-function claiming, but *Laitram* suggests that the use of "means" creates at least a presumption in favor of section 112, ¶ 6. *See id.*; *see also York Prods. Inc. v. Central Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1574, 40 USPQ2d 1619, 1623 (Fed. Cir.1996) ("[T]he use of the word 'means' triggers a presumption that the inventor used the term advisedly to invoke the statutory mandates for means-plus-function clauses.") (*citing Greenberg v. Ethicon Endo–Surgery, Inc.*, 91 F.3d 1580, 1584, 39 USPQ2d 1783, 1787 (Fed.Cir.1996)). Some claim language describing the location of the structure should not be sufficient to over-come this presumption. Nor does the word "perforation" provide enough structure to negate the import of the very next word—"means." I would honor the presumption and construe this claim under the statutory guidance of section 112.

To literally infringe a means-plus-function claim, an accused device must employ means identical to or the equivalent of the structures described in the patent specification. *Valmont Indus. v. Reinke Mfg. Co.*, 983 F.2d 1039, 1042, 25 USPQ2d 1451, 1454 (Fed.Cir. 1993). The final inquiry as to whether an accused element is an "equivalent" is a question of fact. *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1575, 225 USPQ 236, 239 (Fed.Cir. 1985). This court specifically refused to revisit this issue in *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 n. 8, 34 USPQ2d 1321, 1327 n. 8 (Fed.Cir.1995), *aff'd*, — U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Because the district court did not address any structural equivalents under § 112, ¶ 6, genuine issues of material fact remain on the literal infringement issue.

Further, the parties hotly dispute the prosecution history. Cole herself twice requested reexamination, citing the Repke, Strohbeen, and Heran patents. Both times her lawyer stated that these patents were not pertinent, structurally, to any of the claims in the Cole patent. In particular, Cole pointed out differences between the absorbent structures in the prior art and those recited in her claims. With regard to seams, Cole surrendered only coverage of "stitched seams." Cole did not change her claims to escape coverage of any prior art. *See Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1219, 36 USPQ2d 1225, 1230 (Fed.Cir. 1995) ("Prosecution history estoppel normally arises when a change of claim scope is made in order to overcome an examiner's rejection based on prior art."). Thus, prosecution history estoppel should only pose a bar to her infringement case if her statements were "unmistakable." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582, 37 USPQ2d 1365, 1373 (Fed.Cir.

1996); *Texas Instruments Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1174, 26 USPQ2d 1018, 1025 (Fed.Cir.1993); *accord Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1580, 34 USPQ2d 1673, 1680 (Fed.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 515, 133 L.Ed.2d 424 (1995). This ambiguous record does not provide "unmistakable" evidence of Cole's intent to surrender coverage. Thus, genuine issues of material fact remain preventing summary judgment on infringement by equivalents.