BIONX IMPLANTS, INC., Bionx Implants, Oy, and Dr. Saul N. Schreiber, Plaintiffs,

v.

INNOVASIVE DEVICES, INC., Defendant.

No. CIV. A. 98–12111–NG.

United States District Court, D. Massachusetts.

March 16, 1999.

Robert J. Muldoon, Jr., Margaret H. Paget, Sherin & Lodgen, Boston, MA, Lynne Darcy, Kenyon & Kenyon, New York City, for plaintiffs.

Sarah C. Columbia, Choate, Hall & Stewart, Boston, MA, for defendant.

## MEMORANDUM AND ORDER

GERTNER, District Judge.

Plaintiffs, Bionx Implants, Inc., Bionx Implants, Oy, and Dr. Saul N. Schreiber ("Bionx"), seek a Preliminary Injunction enjoining defendant Innovasive Devices, Inc. ("Innovasive") from the manufacture, use, offering for sale, sale or importation of the Innovasive Dart ("Dart"), a product that Bionx claims literally infringes its Patent, No. 4,873,976 ("the Schreiber patent"). Primarily because I hold, for reasons explained below, that Bionx is unlike-

ly to succeed on the merits, Bionx's Motion for a Preliminary Injunction (docket # 3) is **DENIED**.

## I. *FACTUAL BACKGROUND*

### A. *The Devices*

The Schreiber patent is for a "surgical fastener and method," using a bioabsorbable device for repairing torn body tissues, especially a torn meniscus in the knee. The device is called a Meniscus Arrow ("Arrow"). In simpler language, the Arrow is essentially a barbed, bioabsorbable nail. *See* Appendix, figures 3–7. It is driven into a torn meniscus, and holds the meniscus together to allow healing to take place. The meniscus is held together because one or more barbs in the device prevent it from sliding out, and the base keeps it from sliding further in. The torn meniscus is therefore squeezed together between the barb or barbs and the base.

The Dart serves the same function. It too is a bioabsorbable suture that holds a torn meniscus together so that it can heal. Its configuration, however, is less like a conventional nail. *See* Appendix. The tip is rather blunt, and coming off the shaft on only one side, are two or three fins. These fins function like the barb or barbs on the Arrow. Some distance below the fins, a gusset or ridge runs down the side of the shaft. At the tail end of the shaft, on the same side as the fins and gusset, a bar sits angled slightly forward towards the tip. The bar serves the same function as the base on the Arrow.

### B. *The Infringement Claim*

Bionx says that the Dart *literally* infringes on Claims 1 and 15 of the Schreiber patent because it embodies each element of those Claims. (While Bionx's Complaint says that the Dart infringes the Schreiber patent "literally and/or under the doctrine of equivalents," the preliminary injunction motion is based solely on the grounds of literal infringement.) Claim 1, describing "A single unit suture for body tissue repair," has the following elements:

(a) a solid base member for seating against an exterior surface of said tissue;

(b) a single rigid shaft portion upstanding from and integrally connected to said base member adapted for insertion into said tissue; and

(c) barb means integrally connected to said shaft portion to aid in insertion of said shaft portion into said tissue and to lock said shaft portion into said tissue.

Claim 15 has the same elements, but adds that the suture is resorbable in tissue.

## II. *LEGAL STANDARDS*

The standard for obtaining a preliminary injunction is the same in a patent case as it is in other cases. As the moving party, Bionx has to establish its right to a preliminary injunction based on four factors: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if the injunction were not granted; (3) the balance of relative hardships tips in its favor; and (4) whether and how an injunction would impact the public interest." *Bell and Howell Document Management v. Altek Sys.*, 132 F.3d 701, 705 (Fed.Cir. 1997).

The core of the analysis concerns Bionx's likelihood of success on the merits. There are two steps in determining whether there has been a literal infringement: "The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (citation omitted). The first step, that of claim construction, is exclusively a question of law for a court to decide. *Markman*, 517 U.S. at 372, 116 S.Ct. 1384.

Bionx has the burden of proving infringement. *Glaxo, Inc. v. Novopharm, Ltd.,* 110 F.3d 1562, 1567 (Fed.Cir.1997). In order to establish literal infringement of Claim 1, Bionx must demonstrate that the accused device, the Dart, "embod[ies] every element of" Claim 1.[1] *Mannesmann Demag Corp. v. Engineered Metal Prods. Co.,* 793 F.2d 1279, 1282 (Fed.Cir.1986). *See also Strattec Security Corp. v. General Automotive Specialty Co., Inc.,* 126 F.3d 1411, 1418 (Fed.Cir.1997).

[3] Before determining whether the Dart infringes on every element of Claim 1, I must construe the elements of Claim 1. "It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e. the patent itself, including the claims, the specification and, if in the evidence, the procedural history." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). In this case, I have no need to go beyond the intrinsic evidence.

### III. ANALYSIS

#### A. Success on the Merits

##### 1. Construing the Claim

■ I find that the Dart does not infringe the third element of Claim 1. As such, I conclude that the Dart does not literally infringe on either Claim 1 or Claim 15 of the Schreiber patent.

The third element of Claim 1 reads, "barb means integrally connected to said shaft portion *to aid in insertion* of said shaft portion into said tissue and to lock said shaft portion into said tissue" (emphasis added).[2] One way to make sense of a "barb means" aiding in the "insertion" of the shaft (as well as locking the shaft in place) would be to construe the "barb means" to include the pointed tip at the head of the shaft (along with the portion of the "barb means" which extends out past the shaft itself). The other way is to construe the "barb means" as a structure connected to the shaft that is swept back towards the base so that it minimally resists the insertion of the shaft (while also locking the shaft in place).

Bionx would have me read the "barb means" in the second way. This would be consistent with the idea that there can be barbs on places on the shaft other than the tip (*See* Appendix, figures 4, 6, and 7). But while such a construction meets the second requirement of the element in question—"lock[ing] said shaft portion into said tissue"—it does not meet the first—"aid[ing] in insertion of said shaft portion into said tissue."

The first construction of the "barb means," as including the pointed tip, obviously provides a more plausible reading of the concept of *aiding* in the insertion of the shaft. If the Arrow has a pointed tip, which composes part of the "barb means," then the "barb means" plainly aids in the insertion of the rest of the Arrow. If the "barb means" is construed merely as that part of the barb which is "swept back," then the most that can be said for the

---

1. Claim 15 is simply a repeat of Claim 1, with the additional element that the suture is bioabsorbable. Since the Dart is bioabsorbable, infringement will hinge completely on an analysis of Claim 1.

2. Contrary to Innovasive's assertion, this element is not presented in "means-plus-function" language. An element presented in means-plus-function language does not itself "recite a definite structure which performs the described function." *Cole v. Kimberly–Clark Corp.,* 102 F.3d 524, 531 (Fed.Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 56, 139 L.Ed.2d 20 (1997). Put in the context of this case, the issue is whether the word "barb" defines a definite structure for performing the task. I conclude that it does. *See Cole,* 102 F.3d at 531 ("the 'perforation means ... for tearing' element of Cole's claim fails to satisfy the statute [35 U.S. § 112, ¶ 6 (1994)] because it describes the structure supporting the tearing functions (i.e.perforations)"). But the ultimate conclusion here—of no infringement—would hold even if I concluded that the word "barb" did not include a definite structure, since I would then be directed to refer to the specifications in the patent, which

"barb means" is that it *minimally resists* the insertion of the shaft.

Bionx objects that I cannot read Claim 1 to include the requirement of a sharply pointed tip because Claim 9 includes that limitation, and this would make Claim 9 superfluous. Claim 9 reads in full: "The suture of claim 1 wherein said barb means comprises a flat triangular *point at the end* of said shaft portion opposite said base member and having a width greater than said shaft portion" (emphasis added).

Bionx is mistaken. Construing the "barb means" in the third element of Claim 1 to include the idea of a pointed end does not make Claim 9 superfluous. Claim 9 specifies that the "barb means" is to have a flat triangular head. Without that extra specification, one could imagine that the "barb means" would be, for example, conic, with the lip of the cone extending out beyond the width of the shaft (*see* Appendix, figure 5, number 52), or with rod-like extensions protruding beyond the edge of the shaft (like the barbs depicted in Appendix, figure 7, number 62).

Indeed, rather than undermine the construction of "barb means" to include the pointed tip, Claim 9 supports the construction of the "barb means" as including the pointed tip. For if there were any question whether the "barb means" must be limited to only that part of the barb which locks the Arrow in place, that question is answered in the negative by Claim 9, which describes the "barb means" more broadly.

This *construction of the concept of the "barb means" in Claim 1 to include a pointed tip is further confirmed in two ways.* First, it is confirmed by comparing Claim 1 with an alternative embodiment of the Arrow, as described in Claim 16 (depicted in Figure 7). Claim 16 has the following three elements:

(a) a solid base member having a substantially flat portion for seating against an exterior surface of said tissue;

(b) a single, rigid cylindrical shaft portion upstanding from and integrally connected to said base member and *having a pointed end for insertion* into said tissue; and

(c) barb means positioned along said shaft portion.

(emphasis added).

In this embodiment of the Arrow, what serves "for insertion" (i.e. "aids in insertion") is simply the pointed end. This strongly suggests that the "barb means" referred to in Claim 1—which, rather than the tip of the shaft, is said to "aid in insertion"—should be construed as comprising, in part, the pointed tip of the Arrow.

Second, the construction of the "barb means" as including the pointed tip allows Claim 1, which provides a general description of one preferred embodiment, to capture an essential feature of the Arrow, namely that it can be pushed into a meniscus in and of itself, without the need for any other devices. This feature of the Arrow was emphasized numerous times in the procedural history ("PH").[3] For example, Dr. Schreiber argued at one point before the Patent and Trademark Office ("PTO") that it "is crucial ... that no unnecessary enlargement of the aperture of the tissue material through which the fastener must pass through [sic] is required." PH at 97. In other words, the Arrow can be inserted without the use of a carrying needle to bring it into position, and thus, without creating a hole in the tissue wider than the Arrow itself. On another occasion, Dr. Schreiber contrasted the Arrow with another suture which has "no teaching of a rigid shaft as claimed by the Applicant which is necessary to have the suture *penetrate through the meniscus*

---

would only further buttress the ultimate conclusion.

**3.** References to the Procedural History are taken from Tab C in the Affidavit of Sarah Chapin Columbia.

*tear."* PH at 42 (emphasis). While neither of these arguments mentions a pointed tip directly, they clearly indicate that the Arrow has to be capable of *penetrating* meniscal tissue in and of itself, and that in turn implies that the Arrow must have a pointed tip. Construing the "barb means" in Claim 1 to include the pointed tip brings this essential feature of the Arrow—already implied with the "aid in insertion" language—into the general description of Claim 1.

For all of these reasons, I interpret the phrase "a barb means ... to aid in insertion of said shaft" to imply that the barb means comprises not only the projection from the shaft which locks the shaft in place, but also the pointed tip of the shaft. There may be additional barbs on the shaft (as described in Claims 10–12), but they are distinct from the "barb means" described in the third element of Claim 1.

### 2. *Comparing the Dart*

■ The Dart quite simply does not infringe the third element of Claim 1. It has a blunt end. It is at least in part because of the blunt end that the Dart has to be inserted using a needle carrier (a device with a sharp tip, in which the Dart sits, and by which the Dart is inserted into position—see the Appendix).

Because of this difference, I conclude that Bionx is not likely to succeed on the merits.

### B. *Conclusion*

Since I find that Bionx does not meet the "likelihood of success on the merits" test, the public interest resoundingly favors both devices remaining on the market. They both address the problem of holding together a torn meniscus in importantly different ways. The Arrow has the advantage of being inserted with a narrower opening in the meniscus, but it has the disadvantage of having a pointed tip that may cause damage if it somehow works its way through the meniscus. The Dart has the advantage of a blunt tip, but the disadvantage of requiring a needle carrier to be inserted. Patients who need the kind of help that the Arrow and Dart provide, clearly have an interest in having access to whichever device would serve them better. Since I am in no position to say that the Arrow will serve all of these patients better than the Dart, I can only suppose that the public interest overall will be served by leaving the medical community to sort out which device is better under which circumstances.

For the foregoing reasons, Bionx's Motion for a Preliminary Injunction (docket # 3) is **DENIED.**
**SO ORDERED.**

80

## APPENDIX

### Bionx Arrow

fig.3   fig.4

fig.5   fig.6   fig.7

Innovasive Dart

Dart in Needle Carrier